UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**UNITED STATES OF AMERICA,**

v.  No. 6:21-cr-0058-P

**MATHEW RICHARD MARTINEZ.**

## MEMORANDUM OPINION & ORDER

A jury convicted Mr. Mathew Richard Martinez of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). With this conviction, he faces a ten-year minimum sentence of incarceration. Mr. Martinez now seeks a judgment of acquittal based on insufficient evidence, or in the alternative, a new trial. *See* ECF No. 496. For the following reasons, the Court grants his motion for a new trial but denies the motion for acquittal.[1]

---

[1] Before today, the undersigned has never thrown out a jury verdict—not while serving as a state trial judge, not while serving as a state appellate judge, and not while serving as a federal judge. However, as the Court stated after the verdict was received and the jury was dismissed, "[t]his is the weakest case for a conspiracy I have ever seen."

The Court is keenly aware of the tension among the Constitution, jury verdicts, and motions for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. *See United States v. Crittenden*, 25 F.4th 347, 354 (5th Cir. 2022) (Costa, J., dissenting), *judgment vacated and rehearing en banc granted*, 26 F.4th 1015 (5th Cir. 2022); *Cf.* JOHN ADAMS, THE REVOLUTIONARY WRITINGS OF JOHN ADAMS 55 (C. Bradley Thompson ed., 2000) ("Representative government and trial by jury are the heart and lungs of liberty.").

The undersigned, however, concludes that it would be a miscarriage of justice to uphold this verdict based on nothing more than attenuated inferences tangentially supported by the record. The Court does not reach this decision lightly: The undersigned not only presided over the trial but has spent hours reviewing the evidence and record after the verdict was received. If a trial court does not have the discretion to order a new trial under these unique circumstances, the undersigned would be hard-pressed to think of a case where a trial court could exercise its discretion to order a new trial under Rule 33.

## BACKGROUND

Mr. Martinez is a self-described addict—a "functioning addict" to be precise. In other words, Mr. Martinez can perform well at his job even while using methamphetamine. Like any addict, he needed a source to feed his addiction. That led Mr. Martinez to connect with Mr. Joshua Friar—an apparent San Angelo kingpin—in November 2019; he simply needed someone to sell him methamphetamine.

Soon thereafter, the relationship between Mr. Martinez and Mr. Friar became more than business. They became close friends, and Mr. Martinez treated Mr. Friar like family. For example, Mr. Martinez used his company discount to book hotel rooms for his family and close friends, including Mr. Friar. And even after Mr. Friar was arrested with methamphetamine in a room Mr. Martinez had rented, Mr. Martinez again used his discount to book a room because he "consider[ed] him [a] friend."

However, Mr. Friar's arrest was not the end of the matter. Instead, it sparked a wide-ranging investigation into anyone connected to Mr. Friar's drug distribution network. That is how Officer Hank Hethcock—a member of the San Angelo Police Department and a Drug Enforcement Administration task force officer—learned of Mr. Martinez.

Through its investigation, the Government discovered that Mr. Martinez rented the room for Mr. Friar at the Wingate Hotel the night he was arrested. And inside that room, Officer Hethcock found a little over 600 grams of methamphetamine, a pistol, a drug ledger, and three bags of marijuana. Further, subpoenas produced several documents connecting Mr. Martinez to Mr. Friar. These documents included text and online conversations between the two men discussing methamphetamine, as well as online payment records showing several transactions between them. Based on the evidence gathered from the investigation, Mr. Martinez was arrested and charged with one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine.

On April 25, 2022, the Court held a trial on the single-count indictment, with Mr. Hethcock and Mr. Friar testifying for the

Government and Mr. Martinez testifying on his own behalf. After the jury found him guilty, Mr. Martinez filed the instant Motion on May 9, 2022, urging the Court to enter an acquittal or, in the alternative, to grant a new trial based on the insufficiency of the evidence to support his conviction. On May 19, 2022, the Court heard the Motion, which is now ripe for review.

## LEGAL STANDARD

A district court may grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a). The "interest of justice" allows for "the trial judge's evaluation of witnesses and weighing of the evidence." *United States v. Wall*, 389 F.3d 457, 465–66 (5th Cir. 2004). A court therefore has "considerable discretion with respect to Rule 33 motions." *United States v. Jordan*, 958 F.3d 331, 338 (5th Cir. 2020). Despite having considerable discretion, a court should not grant a motion for a new trial unless the "evidence preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997).

## ANALYSIS

Mr. Martinez argues that the evidence fails to establish that he agreed to enter a conspiracy to distribute methamphetamine. Instead, the evidence establishes only a buyer-seller relationship. The Government argues that Mr. Martinez's knowledge of, and participation in, the conspiracy can be inferred from the undisputed facts.

The Court agrees with Mr. Martinez in part: the evidence preponderates heavily against the verdict such that a new trial is warranted. That is, a close examination of the record leads the Court to conclude that Mr. Martinez's conviction may rest on nothing more than an "overly attenuated piling of inference upon inference." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011).

To establish a distribution conspiracy, the Government must prove beyond a reasonable doubt that "(1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy." *United States v. Ochoa*, 667 F.3d 643,

3

648 (5th Cir. 2012). "A conspiracy agreement may be tacit, and the trier of fact may infer an agreement from circumstantial evidence." *United States v. Inocenio*, 40 F.3d 716, 725 (5th Cir. 1994). Mere presence or association alone, however, are not sufficient to support a conspiracy conviction. *See United States v. Brito*, 136 F.3d 397, 409 (5th Cir. 1998).

The Government's case was premised on the undisputed fact that Mr. Martinez booked a room for Mr. Friar at the Wingate Hotel and that methamphetamine was found in that room. And based on conversations between Mr. Martinez and Mr. Friar, the Government argues that the jury reasonably inferred that Mr. Martinez booked this room for the purpose of distributing methamphetamine—making Mr. Martinez a knowing and voluntary participant in the charged conspiracy. The Court disagrees.

Instead, the evidence establishes only that Mr. Martinez frequently booked hotel rooms for his family and friends, including Mr. Friar "when [he needed] a room." Mr. Friar testified that he sometimes needed a room "for distribution" purposes; however, he did not testify that Mr. Martinez knew of, or agreed to, this purpose. Mr. Martinez's testimony goes further: he testified—and the record does not refute—that he would book hotel rooms for Mr. Friar only "as long as [he did not do] anything stupid, such as selling drugs out of them." Besides this testimony showing an insistence that the room *not* be used for distribution, there is a dearth of evidence from which the jury could reasonably infer that Mr. Martinez booked the hotel room because of an agreement to further the charged conspiracy.

And without evidence establishing that Mr. Martinez booked the room pursuant to an agreement to further the charged conspiracy, an equally reasonable inference is that Mr. Martinez booked the room so that his friend (Mr. Friar) had a place to stay—just like he had done on numerous occasions.[2] *See United States v. Grassi*, 616 F.2d 1295, 1301

---

[2]It is also undisputed that Mr. Martinez booked a hotel room for Mr. Friar *after* he was arrested. Thus, the Court cannot help but question how a juror could reasonably infer that Mr. Martinez was booking hotel rooms to knowingly further the charged conspiracy and then continue to commit the same "overt act" following Mr. Friar's arrest. The Court considers the continued effort to assist his friend (Mr. Friar) as

4

(5th Cir. 1980) (underscoring the well-settled rule that "one does not become a coconspirator simply by virtue of knowledge of a conspiracy and association with conspirators").

The Government's case also relied on the undisputed fact that Mr. Martinez typically purchased (up to) an ounce of methamphetamine at a time.[3] The Government's case requires the inference that Mr. Martinez distributed the methamphetamine he purchased from Mr. Friar in furtherance of the alleged conspiracy. The evidence, however, preponderates against this conclusion.

It is undisputed that Mr. Martinez purchased more methamphetamine than Mr. Friar's typical customer. Because Mr. Martinez purchased more than the average user, Mr. Friar "believe[d]" that Mr. Martinez was reselling the methamphetamine. But when questioned further, Mr. Friar admitted that this "belief" was nothing more than mere speculation. And Mr. Friar further testified that he neither met any of Mr. Martinez's alleged "clients" nor maintained a stake in the success of his alleged "business."

The Court recognizes that Mr. Friar's speculation might be correct and that a few messages in the record could have led a juror to this conclusion. But after cautiously reweighing the evidence, the Court finds that the only credible fact is that Mr. Martinez purchased more methamphetamine than Mr. Friar's typical customer. Thus, acting in its limited role under Rule 33, the Court concludes that the evidence preponderates against the conclusion that Mr. Martinez was redistributing the methamphetamine he purchased *in furtherance* of the charged conspiracy. *Cf. United States v. Parker*, 554 F.3d 230, 235 (2d Cir. 2009) (explaining that a seller's mere "awareness . . . that the buyer

---

corroborating Mr. Martinez's testimony that he never agreed to participate in Mr. Friar's conspiracy.

[3]The total amount Mr. Martinez purchased during the period of the charged conspiracy is unclear. The Government argues that the jury could have reasonably inferred from the evidence that Mr. Martinez purchased and distributed approximately two pounds of methamphetamine. But after reviewing the messages and the online transactions, the Court cannot conclude that a reasonable juror would make such an inference.

intends to resell the drugs is not sufficient to show that the seller and the buyer share a conspiratorial intent to further the buyer's resale").

The Government's case also relied on the undisputed fact that Mr. Martinez purchased methamphetamine on credit and (once) paid Mr. Friar for methamphetamine he had yet to receive from his supplier. There is, however, a distinction between consignment and credit agreements. In the former, no title to the product passes because the payment obligation is contingent on the buyer selling the product. *United States v. Garcia*, 135 F.3d 951, 955 (5th Cir. 1998). In the latter, the payment obligation remains regardless of what happens to the product. *Id.*

Here, it is undisputed that Mr. Martinez purchased methamphetamine on credit, not consignment. To be sure, purchasing on credit can still show "a strong level of trust and an ongoing, mutually dependent relationship." *United States v. Holloway*, 377 F. App'x 383, 386 (5th Cir. 2010). But "a buyer-seller relationship, without more, will not prove a conspiracy." *United States v. Maseratti*, 1 F.3d 330, 336 (5th Cir. 1993).

The undisputed facts in the record make clear that Mr. Martinez and Mr. Friar were close friends. It is therefore reasonable to infer that Mr. Martinez's actions can be attributed to their friendship, not an agreement to further Mr. Friar's conspiracy. There is scant evidence to infer that their continuing, symbiotic relationship was based on an agreement to further the charged conspiracy. And there is no evidence that either maintained a stake in the success of the other's so-called "business." Thus, because the evidence does not establish a mutually dependent relationship, the evidence preponderates against the inference that Mr. Martinez purchased methamphetamine on credit because of an agreement to further the charged conspiracy. *See United States v. Delgado*, 672 F.3d 320, 333 (5th Cir. 2012) (nothing that the buyer–seller exception "shields mere acquirers and street-level users, who would otherwise be guilty of conspiracy to distributed, from the more severe penalties reserved for distributers").

The Court recognizes that it is indeed possible that Mr. Martinez was fully aware of the nature of the conspiracy and that he willfully entered into an agreement to further the charged conspiracy. However, the weight of the evidence presented at trial preponderates against the jury's verdict. Thus, acting in its limited role under Rule 33, the Court grants the motion for a new trial to serve the "interest of justice." *Tibbs v. Florida,* 457 U.S. 31, 43 (1982).

## ORDER

For the reasons stated at the hearing, and for the reasons explained above, the Court **GRANTS** Mr. Martinez's Motion to the extent that he seeks a new trial.[4] *See* ECF No. 496. The Court **DENIES** all other relief.

The Court further **ORDERS** that trial in this matter is **SET** for **Monday, June 27, 2022, at 9:00 a.m.** in the Fourth Floor Courtroom of the Eldon B. Mahon United States Courthouse, 501 W. 10th Street, Fort Worth, Texas before Judge Mark Pittman.

**SO ORDERED** on this **23rd day** of **May, 2022.**

_Mark T. Pittman_
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[4] Conducting a new trial in this case will result in very little prejudice to the United States. At the first trial, voir dire was conducted, both sides were able to rest and close, and the jury was charged, in only one day. The Government presented only two witnesses: Officer Hethcock and Mr. Friar, a cooperating codefendant.